In re MANRING AUTO SALES,
INC., Debtor.

SUNSHINE BANK, Plaintiff,

v.

MANRING AUTO SALES, INC., a/k/a
Bill Manring Auto Sales, Inc.,
Defendant.

Bankruptcy No. 80–04116.
Adv. No. 80–9090.

United States Bankruptcy Court,
N. D. Florida,
Pensacola Division.

April 24, 1981.

C. LeDon Anchors, Fort Walton Beach,
Fla., for plaintiff.

James E. Moore, Niceville, Fla., for defendant.

## MEMORANDUM OPINION

N. SANDERS SAULS, Bankruptcy Judge.

This proceeding commenced by the filing of Sunshine Bank of a Complaint to Lift the Stay of 11 U.S.C. § 362 as to certain improved real property of Debtor. Because of calendaring conflicts, a final hearing on the Complaint was not held within the time limitations provided by 11 U.S.C. § 362 and the automatic stay terminated. Upon Motion of the Trustee, a temporary injunction was entered enjoining Plaintiff from any action with regard to the subject property and by subsequent Order, the injunction was made permanent pending a determination of the issues raised by Plaintiff's Complaint. On March 23, 1981, the hearing was held. From the testimony given and the evidence received the facts are substantially undisputed; and upon the record in this case the Court makes the following

## FINDING OF FACTS

1. On July 28, 1980, Manring Auto Sales, Inc. a/k/a Bill Manring Auto Sales, Inc. (Debtor) filed its voluntary petition in this Court under Chapter 7 of 11 U.S.C.

2. On the same date, voluntary bankruptcy petitions were filed by William F. Manring and Grace M. Manring (wife of William F.), the sole stockholders and officers of Debtor.

3. On November 8, 1977, William F. Manring and Grace Manring executed a mortgage to Eglin National Bank (subsequently renamed the Sunshine Bank) ("Bank") on improved real property known as "the north 40 feet of Lot 9 and all of Lot 10, Block 6, Bayview Subdivision", Okaloosa County, Florida.

4. The mortgage recited that it was given to secure a promissory note of $203,-558.95 dated November 8, 1977, executed by William F. Manring, Grace Manring, Lawrence N. Kline, and Grace Kline to the Bank.

5. From 1974 until the present time record title holder of the subject property has always been Manring Auto Sales, Inc.

6. On May 24, 1979, Debtor executed a mortgage on the subject property to the Bank.

7. The mortgage of May 24, 1979, recites that it was given as "a corrective mortgage" to correct an error in the name of the grantor in the mortgage of November 8, 1977.

8. The mortgage of May 24, 1979 recites that it was given to secure the aforedescribed Manring/Kline promissory note of November 8, 1977, and such further sums as may "hereafter and before the foreclosure of this mortgage owe or be due to" the Bank.

9. At the time the mortgage of May 24, 1979 was executed, the promissory note described therein was no longer in existence, it having been cancelled and a renewal note having been executed in favor of the Bank on March 9, 1979, by William and Grace Manring for $122,503.33.

10. On September 7, 1978, William and Grace Manring executed a note in favor of the Bank for $118,815.23.

11. On July 23, 1979, Debtor executed a note in favor of the Bank in the principal sum of $120,000.00.

12. Bank asserts that the Debtor is indebted to it in the sum of $256,840.11 based upon the following promissory notes:
   (a) September 7, 1978 note of William and Grace Manring—$118,815.23;

   (b) March 9, 1979 note of William and Grace Manring—$122,503.33;
   (c) July 23, 1979 note of Debtor—$15,-521.55.

13. At the time the mortgage of May 24, 1979 was executed, Debtor was in receivership in the Circuit Court of Okaloosa County.

14. A Receiver had been appointed in said proceeding for the Debtor in 1978.

15. The Receiver in said action was Larry Parker who, at the same time, was President of the Bank.

16. William F. Manring had been serving as a salaried employee of the Debtor during the term of the receivership, acting under the supervision and control of Larry Parker, and was so serving at the time the May 24, 1979 mortgage was given.

17. At all times relevant in 1977, 1978, and 1979, the Debtor was insolvent.

18. At all times relevant in 1977, 1978, and 1979 the Bank knew the Debtor was in poor financial condition.

19. Subsequent to the commencement of Debtor's bankruptcy case, a hearing was held and a Final Judgment was entered in an action by Bank against Debtor in the Circuit Court of Okaloosa County, Florida, Civil Action No. 80–652, said Final Judgment providing, *inter alia*, for foreclosure by Bank against the subject property; said Final Judgment was entered on August 12, 1980.

20. At the time said hearing was held, Bank's counsel had been advised by Debtor's counsel that Debtor's bankruptcy proceeding had been filed.

21. At the time the mortgages of November 8, 1977 and May 24, 1979 were executed, Debtor had numerous unsecured creditors who still remained as unsecured creditors for the same obligations at the time Debtor's bankruptcy case was commenced.

22. Bank obtained an M.A.I. appraisal of the subject property in November 1980 which fixed the value of the property at $125,000.

23. Debtor valued the subject property in its Bankruptcy Schedules at $200,000.

24. A first mortgage has existed on the subject property since 1974, with a balance at the time Debtor's bankruptcy case commenced of approximately $71,000.

## LEGAL ARGUMENTS

The Bank asserts the mortgage of May 24, 1979 is a valid and enforceable mortgage, that it secures not only the indebtedness on the corporate note of July 23, 1979, but also the indebtedness on the individual notes of September 7, 1978 and March 9, 1979, that the total amount owed to it is $256,840.11, that there is no equity in the property for the benefit of the Estate, that the injunction should be vacated, and that the Bank should be allowed to proceed to foreclosure under its Final Judgment of August 12, 1980.

Conversely, the Trustee asserts that if the mortgage of May 24, 1979 is valid and enforceable it secures only the $15,521.55 balance due on the Debtor's note of July 23, 1979; but the Trustee further asserts that the giving of the mortgage was a fraudulent transfer under Florida law and that the mortgage is invalid as against the Trustee in this proceeding, that the August 12, 1980 Final Judgment was obtained in contravention of the Bankruptcy Code, and that both the mortgage and the August 12, 1980 judgment should be declared null and void.

## CONCLUSIONS OF LAW

11 U.S.C. § 544 specifies certain transfers of property of a debtor that may be avoided by a trustee. Specifically § 544(b) gives the trustee the right to avoid any "transfer of an interest of the debtor in property or any obligation incurred by the debtor" that would be voidable under non-bankruptcy law by a creditor holding an allowable unsecured claim under 11 U.S.C. § 502.

■ The mortgage of November 8, 1977 is not an enforceable mortgage on the subject property. The effect of the mortgage of May 24, 1979, given to the Bank at a time when the Debtor was insolvent and in a receivership action in which the president of the Bank was the Receiver, is a transfer which hindered, delayed, or defrauded other then existing and still existing unsecured creditors of the Debtor and is therefore avoidable under Section 726.01, Florida Statutes, pursuant to Section 544(b) of Title 11, United States Code.

■ Additionally, the judgment obtained by the Bank subsequent to the commencement of this proceeding was obtained in violation of the automatic stay provisions of 11 U.S.C. § 362, and is a null and void judgment under the provisions of Title 11.

Upon the foregoing Findings of Fact and Conclusions of Law, the subject mortgage shall be declared void, the foregoing judgment in favor of the Bank shall be declared null and void, the relief sought by the Bank on its Complaint must be denied, and the injunction previously entered shall be made permanent.

Judgment shall be entered accordingly.